**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
Civil Action No. 3:25-cv-00622-SCR-UMJ

BARBARA BURACKER AND
ELIZABETH MCCROSSAN,

*Plaintiffs*,

v.

INTELICHART, LLC,

*Defendant*.

**MEMORANDUM OF LAW IN SUPPORT OF INTELICHART'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................1
ALLEGED FACTS ................................................................................................3
A. InteliChart's Use of Google Analytics ....................................................3
B. InteliChart's Terms and Conditions ........................................................3
C. Plaintiffs Barbara Buracker and Elizabeth McCrossan .........................4
LEGAL STANDARD ...........................................................................................4
ARGUMENT ........................................................................................................5
I. The Court should dismiss the Amended Complaint under Rule 12(b)(1) because it is jurisdictionally defective and Plaintiffs lack standing. ....................5
A. Plaintiffs' counsel cannot cure the original plaintiff's lack of standing by amending the Complaint to replace him. ....................5
B. Buracker and McCrossan lack Article III standing because they fail to allege an injury-in-fact and do not allege injuries traceable to InteliChart. ............6
II. Each of Plaintiffs' claims should be dismissed for failure to state a claim. ......................10
A. Plaintiffs fail to establish any ECPA violation. ....................................10
1. InteliChart did not "intercept" Plaintiffs' communications. ..........11
2. Separately, the party exception exempts InteliChart from liability under the ECPA. ....................13
3. Plaintiffs have not made allegations that justify applying the crime-tort exception. ....................14
B. The economic-loss rule bars recovery on Plaintiffs' tort claims. ..........................17
C. Plaintiffs allege no causation or damages for negligence, and they expressly allege intentional conduct. ....................19
D. Plaintiffs' breach of fiduciary duty claim fails. ....................................21
1. InteliChart is not a health care provider. ....................................21
2. InteliChart's T&Cs do not give rise to a fiduciary duty. ...............23
3. Plaintiffs cannot show that InteliChart was the proximate cause of the alleged injuries. ....................23
E. Plaintiffs' breach of contract claim should be dismissed. ......................................23
CONCLUSION ....................................................................................................24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Novant Health*,
No. 1:22-CV-697, 2023 WL 5486240 (M.D.N.C. Aug. 24, 2023) ..............................2, 11, 12

*Amburgy v. Express Scripts, Inc.*,
671 F. Supp. 2d 1046 (E.D. Mo. 2009).......................................................................24

*Andrews v. Prisma Health*,
No. 6:23-CV-03153, 2024 WL 3861384 (D.S.C. Aug. 16, 2024).....................................9, 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)......................................................................................................4

*Aziz v. Alcolac, Inc.*,
658 F.3d 388 (4th Cir. 2011) .........................................................................................5

*Beck v. McDonald*,
848 F.3d 262 (4th Cir. 2017) ........................................................................4, 6, 7, 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)......................................................................................................5

*Birks v. Arena Tech. Res., LLC*,
No. CV GLS 25-164, 2026 WL 804092 (D. Md. Mar. 23, 2026) ............................................9

*Bonewit v. New-Indy Containerboard LLC*,
No. 24-CV-11338, 2024 WL 4932186 (D. Mass. Dec. 2, 2024).............................................20

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010).....................................................................................15, 16

*Clemons v. Waller*,
82 F. App'x 436 (6th Cir. 2003) ...................................................................................15

*Comm. to Elect Dan Forest v. Emps. Pol. Action Comm.*,
376 N.C. 558, 853 S.E.2d 698 (2021)..........................................................................19

*CommScope Credit Union v. Butler & Burke, LLP*,
369 N.C. 48, 790 S.E.2d 657 (2016)............................................................................21

*Crescent Univ. City Venture, LLC v. Trussway Mfg., Inc.*,
376 N.C. 54, 852 S.E.2d 98 (2020)..............................................................................18

*Demarco v. Charlotte-Mecklenburg Hosp. Auth.*,
268 N.C. App. 334, 836 S.E.2d 322 (2019)....................................................................19

*DIRECTV, Inc. v. Barnes*,
302 F. Supp. 2d 774 (W.D. Mich. Feb. 2, 2004) ......................................................15

*Doe v. Obama*,
631 F.3d 157 (4th Cir. 2011) ........................................................................................8

*Dougherty v. Bojangles' Rests., Inc*,
No. 3:25-CV-00065, 2025 WL 2810673 (W.D.N.C. Sept. 30, 2025) .........................7, 8, 9, 10

*Dove v. Harvey*,
168 N.C. App. 687, 608 S.E.2d 798 (2005)....................................................................23

*Edwards v. Vanguard Fiduciary Tr. Co.*,
No. 18 CVS 2818, 2018 WL 6843415 (N.C. Super. Ct. Dec. 21, 2018)................................18

*Frank Krasner Enters., Ltd. v. Montgomery Cnty., MD*,
401 F.3d 230 (4th Cir. 2005) ........................................................................................8

*Goines v. Valley Cmty. Servs. Bd.*,
822 F.3d 159 (4th Cir. 2016) ........................................................................................3

*Hager v. Smithfield E. Health Holdings, LLC*,
264 N.C. App. 350, 826 S.E.2d 567 (2019)...........................................................21, 22, 23

*Horne v. Cumberland Cnty. Hosp. Sys., Inc.*,
228 N.C. App. 142, 746 S.E.2d 13 (2013)......................................................................20

*House v. Mitra QSR KNE LLC*,
796 F. App'x 783, 787–90 (4th Cir. 2019) .....................................................................6

*Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*,
892 F.3d 613 (4th Cir. 2018) ........................................................................................6

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015)......................................................................10, 13, 14, 15

*In re JetBlue Airways Corp. Priv. Litig*,
379 F. Supp. 2d, 299, 326-27 (E.D.N.Y. 2005)...............................................................24

*Jones v. Bloomingdales.com, LLC*,
124 F.4th 535 (8th Cir. 2024) ........................................................................................7

*Lamb v. Styles*,
263 N.C. App. 633, 824 S.E.2d 170 (2019)....................................................................19

*Lemon v. Myers Bigel, P.A.*,
985 F.3d 392 (4th Cir. 2021) ....................................................................................5

*Lockerman v. S. River Elec. Membership Corp.*,
250 N.C. App. 631, 794 S.E.2d 346 (2016)................................................................21

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010, 1028–29 (N.D. Cal. 2012) ......................................................24

*Lucas v. Fox News Network, LLC*,
248 F.3d 1180 (11th Cir. 2001) ...........................................................................15, 16

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992).......................................................................................................5

*Marsico v. Adams*,
47 N.C. App. 196, 266 S.E.2d 696 (1980)...................................................................24

*McNew v. Fletcher Hosp., Inc.*,
No. 22 CVS 19, 2022 WL 4359246 (N.C. Super. Ct. Sept. 20, 2022) ........................21

*Panighetti v. Intelligent Business Solutions, Inc.*,
No. 1:23CV209, 2025 WL 1796454, at *4 (M.D.N.C. June 30, 2025)........................10

*Perry v. Frigi-Temp Frigeration, Inc.*,
No. 20 CVS 916, 2020 WL 5292044 (N.C. Super. Ct. Sept. 3, 2020) ..................17, 18

*Peter Marco, LLC v. Banc of Am. Merch. Servs., LLC*,
660 F. Supp. 3d 453 (W.D.N.C. 2023) .......................................................................18

*Piedmont Inst. of Pain Mgmt. v. Staton Found.*,
157 N.C. App. 577, 581 S.E.2d 68 (2003)...................................................................19

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) ...............................................................................15, 16

*Podroykin v. Am. Armed Forces Mut. Aid Assoc.*,
634 F. Supp. 3d 265 (E.D. Va. 2022) ...........................................................................9

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ........................................................................................7

*Redman v. Am. Airlines, Inc.*,
No. 322-CV-00515, 2023 WL 4768696 (W.D.N.C. July 26, 2023).............................21

*Roberson v. Dale*,
464 F. Supp. 680 (M.D.N.C. 1979) .............................................................................24

*Roberts v. Charlotte Mecklenburg Hospital Authority*,
No. 3:24-CV-00382, 2025 WL 880538 (W.D.N.C. Mar. 20, 2025)............................2, 12, 17

*Rodriguez v. FastMed Urgent Care, P.C.*,
741 F. Supp. 3d 352 (E.D.N.C. 2024)....................................................................2, 12, 13, 17

*Stuart v. Kyocera AVX Components Corp.*,
769 F. Supp. 3d 476 (D.S.C. 2025)...........................................................................................7

*Sussman v. Am. Broad. Cos.*,
186 F.3d 1200 (9th Cir. 1999) .................................................................................15, 16

*Sykes v. Health Network Sols., Inc.*,
372 N.C. 326, 828 S.E.2d 467 (2019)........................................................................................23

*TransUnion, LLC v. Ramirez*,
594 U.S. 413 (2021)..............................................................................................................4, 8

*Webb v. Injured Workers Pharmacy, LLC*,
72 F.4th 365 (1st Cir. 2023).................................................................................................8, 20

*Weston v. Lefiti*,
No. 24-541, 2024 WL 4579237 (9th Cir. Oct. 25, 2024) .......................................................15

*Wilkins v. Eng. Constr. Co., Inc.*,
823 F. Supp. 3d 614 (W.D. Va. 2026) ........................................................................................9

*Williams v. DukeHealth*,
No. 1:22-CV-727, 2024 WL 898051 (M.D.N.C. Mar. 1, 2024)..................................2, 12, 13

**Statutes**

18 U.S.C. § 2510..................................................................................................................1, 11

18 U.S.C. § 2511..........................................................................................................11, 13, 14

## INTRODUCTION

InteliChart offers health care providers an Internet-based portal that allows patients of those providers to access their health records, communicate with their doctors, and schedule appointments online. Plaintiffs Barbara Buracker and Elizabeth McCrossan allege they used InteliChart's portal to review medical records and doctor notes from their health care providers. First Amended Class Action Compl., ECF No. 17 ("Compl.") ¶¶ 14–15.

Plaintiffs are attempting to bring a class action against InteliChart for its use of Google Analytics, *id.* ¶¶ 1, a commonplace Internet technology that InteliChart used to collect data about website usage, *id.* ¶¶ 65–66, 115, 137. Plaintiffs claim that InteliChart's use of Google Analytics on the portal violated their privacy. They have pleaded a federal statutory claim and three common-law claims.[1]

The Court lacks subject matter jurisdiction over the Amended Complaint because the amendment to add new plaintiffs did not cure the jurisdictional defect of the original complaint. Plaintiffs' claims further fail for a lack of subject matter jurisdiction because Plaintiffs do not have standing. Plaintiffs do not allege an injury, let alone any injury recognized by federal courts as an injury-in-fact. Plaintiffs also fail to show a causal connection between their alleged injury and InteliChart. Because Plaintiffs have not satisfied these minimum requirements for standing, their Amended Complaint should be dismissed for lack of jurisdiction under Rule 12(b)(1).

Even if Plaintiffs could satisfy the constitutional requirements for standing, their claims all fail on the merits. Their claim under the federal Electronic Communications Privacy Act

---

[1] The counts in Plaintiffs' Amended Complaint allege violation of the federal Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2510, *et seq.*, (Count I); breach of fiduciary duty (Count II); negligence (Count III); and breach of contract (Count V). There is no Count IV.

asserts that InteliChart's use of Google Analytics was an unlawful wiretap. But federal courts in North Carolina consistently hold that using technologies like Google Analytics on health care websites does not violate the ECPA.[2] This Court should not deviate from that common-sense precedent.

Plaintiffs' tort claims for negligence and breach of fiduciary duty are based on alleged issues with InteliChart's handling of Plaintiffs' protected health information ("PHI"), which Plaintiffs allege is covered by the InteliChart Terms & Conditions of Use ("T&Cs"). Because InteliChart's handling of Plaintiffs' information is governed by an alleged contract, these tort claims are barred by the economic-loss rule.

Plaintiffs' negligence claim also fails because they do not allege particularized damages attributable to InteliChart, and they allege intentional conduct, which cannot give rise to a claim for negligence.

Plaintiffs' fiduciary duty claim should be dismissed because InteliChart has no physician-patient relationship with Plaintiffs, and there is no factual or legal basis to find that it owed them a fiduciary duty.

Finally, Plaintiffs' breach of contract claim fails because their primary damages theories are not recoverable in contract, and resorting to nominal damages does not convey standing.

For all these reasons, the Court should dismiss Plaintiffs' Amended Complaint.

---

[2] All three federal districts in North Carolina have rejected similar ECPA claims in the past three years. *Roberts v. Charlotte Mecklenburg Hospital Authority*, No. 3:24-CV-00382, 2025 WL 880538, at *3 (W.D.N.C. Mar. 20, 2025); *Rodriguez v. FastMed Urgent Care, P.C.*, 741 F. Supp. 3d 352, 363 (E.D.N.C. 2024); *Williams v. DukeHealth*, No. 1:22-CV-727, 2024 WL 898051, at *8–9 (M.D.N.C. Mar. 1, 2024), *report and recommendation adopted sub nom. Naugle v. Duke Univ. Health Sys., Inc.*, No. 1:22-CV-727, 2024 WL 1307216 (M.D.N.C. Mar. 27, 2024); *Allen v. Novant Health*, No. 1:22-CV-697, 2023 WL 5486240, at *4 (M.D.N.C. Aug. 24, 2023).

## ALLEGED FACTS

### A. InteliChart's Use of Google Analytics

InteliChart offers an online portal for health care providers. Compl. ¶¶ 1–3, 16, 26.[3] The InteliChart portal allows patients of these providers to access their medical records, schedule appointments, and send messages. *Id.* ¶¶ 2, 28, 48. The portal facilitates communication between patients and providers, but the providers, not InteliChart, provide medical care to patients. *Id.* ¶¶ 2–3, 16, 46, 48.

InteliChart used Google Analytics on its portal. *Id.* ¶¶ 52–53. This technology allows the website to gather information about how users interact with the website while browsing. *See id.* ¶ 76. It helps organizations measure the utilization of their products. *Id.* ¶¶ 115, 137, 208. Google Analytics transmits some information to Google. *Id.* ¶¶ 28, 37, 52, 62.

### B. InteliChart's Terms and Conditions

Plaintiffs incorporate InteliChart's T&Cs into the Amended Complaint.[4] *Id.* ¶¶ 173–79. Plaintiffs allege these T&Cs are a contract between InteliChart and portal users that users accept during registration or by using InteliChart's portal. *See id.* ¶ 178. As part of the T&Cs, InteliChart explicitly states that it "does not offer medical or any other health care advice, diagnosis, or treatment." Ex. A.

The terms also outline how InteliChart uses and protects users' health information. They state that InteliChart has the right to access, use, and distribute information provided by users but

---

[3] Plaintiffs also allege that Google Analytics was on InteliChart's mobile application. Compl. ¶¶ 9(b), 56. However, Plaintiffs do not make any separate allegations in this regard. Thus, for purposes of this brief, InteliChart will address the website and mobile application as the "portal."

[4] InteliChart's T&Cs are attached as Exhibit A. The Court may consider the T&Cs when evaluating InteliChart's Motion because it is "integral to the complaint and authentic." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 164 (4th Cir. 2016).

would not share that information with non-provider third parties "in a form that would be reasonably likely to be personally identifiable." Ex. A.

### C. Plaintiffs Barbara Buracker and Elizabeth McCrossan

Plaintiffs Barbara Buracker and Elizabeth McCrossan are patients of a North Carolina health care provider whose patients have access to InteliChart's portal.[5] *Id.* ¶¶ 14–15. They both allege that they are "registered user[s]" of InteliChart's portal and "ha[ve] used it to review medical records and doctor notes." *Id.* They contend that InteliChart disclosed their health and browser information to Google when they used the portal. *Id.* ¶¶ 37, 50.

Plaintiffs assert four claims against InteliChart. Because Google Analytics was on InteliChart's portal when Plaintiffs used the portal, they assert that InteliChart improperly "intercepted" their communications in violation of the ECPA. *Id.* ¶¶ 191–224. Plaintiffs also allege common-law claims for breach of fiduciary duty, negligence, and breach of contract.

## LEGAL STANDARD

InteliChart moves to dismiss all claims under Rule 12(b)(1) because challenges to standing raise issues of subject matter jurisdiction. A plaintiff bears the burden of demonstrating standing "for each claim" and "for each form of relief" sought. *TransUnion, LLC v. Ramirez,* 594 U.S. 413, 430–31 (2021). For purposes of standing, courts treat factual allegations as true but "conclusory statements" or "legal conclusions" are not treated as true. *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). When considering whether to dismiss a class action complaint under Rule 12(b)(1), courts "analyze standing based on the allegations of personal injury made by the named plaintiffs." *Id.* at 269.

[5] Buracker and McCrossan were not originally plaintiffs in this action. When InteliChart raised issues with the original plaintiff (filed as John Doe, later disclosed to be Shaun Pilon), Plaintiffs' counsel amended their complaint to add Buracker and McCrossan in place of Pilon.

InteliChart also moves to dismiss each of Plaintiffs' claims under Rule 12(b)(6). A plaintiff's complaint must be "pled with sufficient facts 'to state a claim to relief that is plausible on its face.'" *Lemon v. Myers Bigel, P.A.*, 985 F.3d 392, 399 (4th Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although the Court "must accept the material facts alleged in the complaint as true, statements of bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir. 2011) (internal citations omitted).

## ARGUMENT

### I. The Court should dismiss the Amended Complaint under Rule 12(b)(1) because it is jurisdictionally defective and Plaintiffs lack standing.

Plaintiffs bear the burden of establishing that the Court has jurisdiction over their claims by establishing standing under Article III. The elements of the standing inquiry are "not mere pleading requirements but rather an indispensable part of the plaintiff's case." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). As a threshold matter, this action is jurisdictionally defective because the original plaintiff lacked standing, creating a defect that cannot be cured by adding new named plaintiffs. Even if the Court considers the Amended Complaint, the current named Plaintiffs lack standing because they fail to allege an injury-in-fact traceable to InteliChart. Accordingly, the Court should dismiss the Amended Complaint under Rule 12(b)(1).

#### A. Plaintiffs' counsel cannot cure the original plaintiff's lack of standing by amending the Complaint to replace him.

Before addressing the defects in the claims asserted by Buracker and McCrossan, InteliChart raises the threshold issue that the Court lacks jurisdiction over their Amended Complaint. The original complaint was filed by "John Doe," later identified as Shaun Pilon. ECF No. 1. After InteliChart raised issues with Pilon's allegations, his counsel filed an Amended Complaint that replaced Pilon with Buracker and McCrossan, ECF No. 17, creating a

jurisdictional defect that InteliChart raised in a motion to strike under Rule 12(f), ECF No. 19. In its July 28 Order, the Court denied that motion without prejudice to filing a motion to dismiss. To the extent the Court's July 28 Order denied InteliChart's Rule 12(f) motion without reaching the merits of this jurisdictional argument, InteliChart reasserts it here under Rule 12(b)(1).

As InteliChart explained in its prior brief, ECF No. 20, the Amended Complaint in this action is jurisdictionally defective. The Fourth Circuit's decision in *House v. Mitra QSR KNE LLC* confirms that where a plaintiff lacks Article III standing at the outset, this defect cannot be cured by substituting a new plaintiff. 796 F. App'x 783, 787–90 (4th Cir. 2019). The Federal Rules "do not extend or limit the jurisdiction of the district courts," and a procedural amendment cannot retroactively create jurisdiction that did not exist when the case was filed. *Id.* at 789. If Pilon lacked standing when this action was filed, the Amended Complaint could not cure that defect by replacing him with Buracker and McCrossan. For that reason, the case should be dismissed for lack of jurisdiction under Rule 12(b)(1).

### B. Buracker and McCrossan lack Article III standing because they fail to allege an injury-in-fact and do not allege injuries traceable to InteliChart.

InteliChart moves to dismiss the Complaint under Rule 12(b)(1) because federal courts hold that injuries like those alleged here are insufficient to confer standing. To establish Article III standing, a plaintiff must show that "(1) they suffered an injury-in-fact that was concrete and particularized and either actual or imminent; (2) there was a causal connection between the injury and the defendant's conduct (i.e. traceability); and (3) the injury was likely to be redressable by a favorable judicial decision." *Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*, 892 F.3d 613, 619 (4th Cir. 2018).

Where a plaintiff alleges disclosure of personal information, the Fourth Circuit requires the plaintiff to allege *actual misuse* of that information. *Beck*, 848 F.3d at 275. Without such

concrete allegations of injury, these privacy claims are simply too "speculative," "attenuated," and "hypothetical" to satisfy the standing requirement. *Beck*, 848 F.3d at 272–76. Other federal circuit courts have reached similar conclusions. *E.g.*, *Popa v. Microsoft Corp.*, 153 F.4th 784, 795 (9th Cir. 2025); *Jones v. Bloomingdales.com, LLC*, 124 F.4th 535, 540 (8th Cir. 2024).

Plaintiffs' Amended Complaint alleges a variety of non-tangible injuries, including receiving targeted advertising, becoming exposed to an increased risk of future harm, reducing the value of their PHI, losing the benefit of the bargain, and suffering psychological harm. As detailed below, each of these theories, which are common to all claims, fails to show the kind of concrete injury required for standing.

**Targeted Advertising.** Plaintiffs allege—without detail—that they received "[r]epeated targeted advertisements" that reflected their PHI. Compl. ¶ 151(e). But, as this Court and other district courts in the Fourth Circuit have held, such allegations are insufficient. *See Dougherty v. Bojangles' Rests., Inc*, No. 3:25-CV-00065, 2025 WL 2810673, at *5 (W.D.N.C. Sept. 30, 2025); *Stuart v. Kyocera AVX Components Corp.*, 769 F. Supp. 3d 476, 489 (D.S.C. 2025). In *Stuart*, for example, the plaintiffs alleged that they received spam calls, texts, and emails following a data breach. 769 F. Supp. 3d at 489. The court concluded that bare allegations of receiving spam did not show an injury-in-fact without further factual support, "including the dates or substance of the alleged calls or emails." *Id.* Similarly, in *Dougherty*, the plaintiff alleged an increase in spam and scam calls, but the court rejected this as insufficient for standing absent a "specific connection" to the defendant's conduct. 2025 WL 2810673, at *5.

Here, too, Plaintiffs include conclusory allegations that they received targeted advertisements, but they fail to allege sufficient facts about these advertisements. Compl. ¶¶ 110, 151(e). These bare allegations alone cannot show injury-in-fact.

Moreover, even if targeted advertising was sufficient to satisfy the injury-in-fact requirement for standing, Plaintiffs have not connected any targeted advertisements to InteliChart's alleged conduct. A plaintiff's injury is not "fairly traceable" to the defendant if the causal connection is too attenuated or highly indirect. *See Frank Krasner Enters., Ltd. v. Montgomery Cnty., MD*, 401 F.3d 230, 234 (4th Cir. 2005). Traceability also requires a plaintiff to show that her injury was caused by the defendant's actions and not the "independent action of some third party not before the court." *Doe v. Obama*, 631 F.3d 157, 161 (4th Cir. 2011).

Plaintiffs' own allegations reflect that any targeted advertisements they received may well be related to their own actions on *other* websites. Indeed, they allege that Google retained information about them, including their "prior searches." Compl. ¶ 54; *see id.* ¶ 66 (alleging "Google Analytics has massive reach"). Plaintiffs have not provided the Court with any plausible basis to infer that the alleged targeted advertisements are traceable to InteliChart, and not their own Google searches.

**Increased risk of future harm.** Plaintiffs assert an increased risk of future harm associated with InteliChart's use of Google Analytics, but this is also insufficient for Article III standing. "[M]ere risk of future harm, without more" does not suffice to demonstrate Article III standing. *TransUnion*, 594 U.S. at 437; *Dougherty*, 2025 WL 2810673, at *3. A plaintiff must also show "a separate concrete harm caused by their exposure to the risk itself" to establish standing based on risk of future harm. *Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365, 372 (1st Cir. 2023) (cleaned up). As stated above, Plaintiffs cannot show that InteliChart's alleged conduct caused any such actual harm.

**Diminution in value of Plaintiffs' PHI.** Plaintiffs spill much ink on the alleged value of PHI in e-commerce, but they do not allege facts showing that their PHI has, in fact, diminished

in value, nor have they alleged any causal connection to InteliChart's conduct. Compl. ¶ 151(l). When courts have recognized diminution in value of PHI as a basis for standing, they have done so because the plaintiff alleged a concrete injury tied to actual misuse. *See Andrews v. Prisma Health*, No. 6:23-CV-03153, 2024 WL 3861384, at *9 (D.S.C. Aug. 16, 2024) (citing fraudulent accounts or tax returns as examples of concrete injuries). But Plaintiffs have not alleged any attempt to sell their PHI or that they have had to take a lower price for the sale of their PHI. Without more, Plaintiffs' alleged injuries do not support standing. *See id.*; *Dougherty*, 2025 WL 2810673, at *5; *Wilkins v. Eng. Constr. Co., Inc.*, 823 F. Supp. 3d 614, 621 (W.D. Va. 2026) (concluding that the plaintiffs' failure to allege that "they would have or could have sold the PII" was fatal to their argument that diminution in value of PII was an injury).

**Benefit of the bargain.** In the context of a data breach, courts in the Fourth Circuit have not concluded a plaintiff has standing merely because she alleges she did not receive the benefit of the bargain. *See Podroykin v. Am. Armed Forces Mut. Aid Assoc.*, 634 F. Supp. 3d 265, 272 (E.D. Va. 2022); *Birks v. Arena Tech. Res., LLC*, No. CV GLS 25-164, 2026 WL 804092, at *10 (D. Md. Mar. 23, 2026). Even those courts that theoretically recognize this theory still have not found standing if the plaintiff does not allege a decrease in the value of a service provided by the defendant. In *Andrews*, for example, the court held a plaintiff who alleged she would not have used a website or provided personal information had she known about the defendant's use of tracking technologies on the site lacked standing because this was not equivalent to a decrease in value. 2024 WL 3861384, at *9.

Here, Plaintiffs allege that they did not receive the benefit of their bargain with InteliChart because they "did not receive the reasonable privacy and data security protections for which they paid." Compl. ¶ 151(f). But Plaintiffs paid no money to use the portal. *See id.* ¶¶ 2,

16, 27. Nor was the quality of their use of the portal diminished by the use of Google Analytics. Although Plaintiffs allege they would have refused InteliChart's services, *id.* ¶ 231, these allegations do not show that the value of InteliChart's services was reduced. *See Andrews*, 2024 WL 3861384, at *9.

**Emotional distress.** Plaintiffs' emotional distress allegations do not create standing. For example, in *Panighetti v. Intelligent Business Solutions, Inc.*, the plaintiff alleged that he feared for his financial security and suffered from anxiety and emotional distress. No. 1:23CV209, 2025 WL 1796454, at *4 (M.D.N.C. June 30, 2025). The court concluded that these allegations did not show an actionable injury-in-fact because they were "nothing more than bare assertions of possible or potential harm that could be caused." *Id.* Likewise, Plaintiffs offer only "bare assertions" of emotional distress. This is not enough to establish standing. *See Beck*, 848 F.3d at 273; *Dougherty*, 2025 WL 2810673, at *5.

In short, the Court should dismiss Plaintiffs' Amended Complaint for lack of standing under Rule 12(b)(1) because none of their proposed damages theories meets the requirements of injury-in-fact and traceability necessary to invoke this Court's jurisdiction.

## II. Each of Plaintiffs' claims should be dismissed for failure to state a claim.

Even if Plaintiffs had standing to sue, they fail to state a claim under any of their theories. Accordingly, even if the Court concludes that it has jurisdiction over Plaintiffs' Amended Complaint, it should dismiss this action under Rule 12(b)(6).

### A. Plaintiffs fail to establish any ECPA violation.

To pursue a claim under the ECPA, a plaintiff must allege that the defendant "(1) intentionally (2) intercepted . . . (3) the contents of (4) an electronic communication, (5) using a device." *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 135 (3d Cir.

2015). Once a plaintiff establishes these elements, a court must determine whether the claim falls within one of the statutory exceptions to liability.

As detailed below, Plaintiffs' ECPA claim fails because they cannot satisfy the basic elements of an ECPA claim, nor can they avoid application of the "party exception" to the statute. First, the ECPA only applies to "intercepted" communications, but Plaintiffs allege that InteliChart was the intended recipient of their communications. Compl. ¶¶ 37, 55, 57. Second, intercepted communications do not violate the statute if the defendant is "a party to the communication" or the plaintiff gives "prior consent." 18 U.S.C. § 2511(2)(d). This "party exception" applies here because Plaintiffs allege that InteliChart was a party to the communications, and that they consented to the InteliChart T&Cs. Compl. ¶¶ 57–59, 195, 262, 267. Finally, Plaintiffs' allegations suggest that they seek to proceed under the "crime-tort exception," which applies when a defendant intercepts a communication with criminal or tortious intent. The crime-tort exception was created to prohibit a defendant from wiretapping his own conversation to blackmail a plaintiff, and it does not apply here.

### 1. InteliChart did not "intercept" Plaintiffs' communications.

The ECPA defines "intercept" as "the aural or other acquisition of the contents of any wire, electronic, or oral communication." 18 U.S.C. § 2510(4). In instances where the plaintiff *intended* to transmit the communication to the defendant and the facts show that the defendant *received* it as directed by the plaintiff, there was no unlawful "acquisition" by the defendant and therefore no statutory "interception."

North Carolina federal courts have repeatedly applied this straightforward interpretation of the statute to dismiss claims like this one. In *Allen*, for example, the plaintiff claimed that his health care provider violated the ECPA by inserting a tracking pixel on its portal that transmitted data to Meta. 2023 WL 5486240, at *4. The Middle District of North Carolina dismissed the

plaintiff's ECPA claim because the health care provider merely "received" (rather than "intercepted") the communications. *Id.* If any entity "intercepted" a communication, the court explained, it was Meta. *Id.* Similarly, in *Williams*, the court concluded that a plaintiff "voluntarily sent" communications to the health care provider defendant so there was no interception by that defendant. 2024 WL 898051, at *8–9. And in *Rodriguez*, the Eastern District of North Carolina dismissed the plaintiff's complaint based on the same rationale. 741 F. Supp. 3d at 363. Finally, in *Roberts*, this Court held that the defendant did not "intercept" communications on the defendant's own website and portal. 2025 WL 880538, at *3.

Here, too, Plaintiffs initiated communications with InteliChart by using the portal. Compl. ¶¶ 37, 55, 204, 210. Plaintiffs allege that they "accessed," *id.* ¶ 113, "interacted with," *id.* ¶ 204, and "[made] contact with" the portal, *id.* ¶ 210, all in order to "confirm appointments, check test results, search for treatment information, and message [their] doctors," *id.* ¶¶ 109, 111. They assert that InteliChart "intercepted" these communications with the portal. *Id.* ¶¶ 93, 101, 113. But Plaintiffs initiated and sent the communications to InteliChart. *See id.* ¶¶ 109, 111. InteliChart did not acquire these communications through any "interception."

Plaintiffs further allege that "[s]ource code on InteliChart's Patient Portals causes these communications to be intercepted and disclosed to Google," *id.* ¶ 28, that "[t]he Google source code InteliChart deployed inside its Patient Portals intercepted patients' communications," *id.* ¶ 52, and that "InteliChart enables Google" to use cookies to collect information, *id.* ¶ 62. *See also id.* at 27; *id.* ¶ 55. These allegations are incompatible with Plaintiffs' claim that *InteliChart* intercepted communications. If Google in fact "intercepted" Plaintiffs' communications, then Google—not InteliChart—would be liable under the ECPA. *See Allen*, 2023 WL 5486240, at *4; *Rodriguez*, 741 F. Supp. 3d at 363.

Thus, InteliChart cannot be liable because Plaintiffs have not shown that InteliChart intercepted communications as defined by the ECPA.

**2. Separately, the party exception exempts InteliChart from liability under the ECPA.**

The party exception to the ECPA provides that "[i]t shall not be unlawful . . . for a person . . . to intercept a wire, oral, or electronic communication where such person is a party to the communication." 18 U.S.C. § 2511(2)(d). Under this "party exception," a defendant that is "the intended recipient of a communication" is necessarily a party to that communication. *In re Google*, 806 F.3d at 143. Because InteliChart was an intended recipient of Plaintiffs' alleged communications, Plaintiffs' ECPA claim should also be dismissed under the party exception.

When presented with similar claims, North Carolina federal courts have consistently dismissed them on this basis. In *Williams,* for example, the court dismissed the plaintiff's ECPA claim not only because the plaintiff "voluntarily sent [communications] to Defendant," but also because the complaint "allege[d] that the Defendant was a party to the communications." 2024 WL 898051, at *8–9. And in *Rodriguez,* the court concluded that the defendant did not violate the ECPA because the plaintiff's allegations showed that the defendant "was a party to [plaintiff's] communications," which precluded the ECPA claim. 741 F. Supp. 3d at 363. The Court should follow these precedents and dismiss Plaintiffs' ECPA claim.

The most notable federal appellate court case to examine ECPA liability in the context of similar "cookie" tracking technology also applied the party-exception rationale to dismiss ECPA claims. Notwithstanding the plaintiffs' allegation that the defendant advertisers had installed cookies on plaintiffs' browsers that shared information without plaintiffs' knowledge, the Third Circuit held that the defendants received the same information "in the ordinary course" through communications "sent directly" from the plaintiffs. *In re Google*, 806 F.3d at 141–43. Because

the information transmitted by the cookies constituted communications to which the defendants were parties, the party exception applied. *Id.* at 143.

The communications and technology here are analogous to *In re Google*. Plaintiffs allege that InteliChart "deployed," Compl. ¶ 53, and "used," *id.* ¶ 64, code from Google that "deposited Google cookies," *id.* ¶ 55, which disclosed the "same communications" that Plaintiffs directed toward InteliChart to Google, *id.* ¶ 207; *see also id.* ¶¶ 37, 105. Because InteliChart received the communications that Plaintiffs directed toward it, InteliChart was a party to the communications.

The Court should disregard Plaintiffs' attempt to avoid this outcome by making conclusory allegations that they were only communicating with their providers, not InteliChart. *Id.* ¶¶ 211, 214. This contradicts Plaintiffs' own extensive allegations regarding both InteliChart's role, *id.* ¶¶ 35, 58, 62, 105, 204, 210, and the technology's functions, *id.* ¶¶ 203, 210. As their own allegations make clear, Plaintiffs knowingly and intentionally engaged in communication that involved InteliChart, removing their claim from the ECPA's coverage of communications "intercepted" by a third party.

#### 3. Plaintiffs have not made allegations that justify applying the crime-tort exception.

Plaintiffs have included several allegations in their Amended Complaint that suggest they will argue that the "crime-tort exception" to the party exception saves their ECPA claim. *See* Compl. ¶¶ 215–16. Under this "exception to the exception," a party to a communication may still be liable under the ECPA, notwithstanding the party exception, if "such communication is intercepted for the purpose of committing any criminal or tortious act." 18 U.S.C. § 2511(2)(d).

As an initial matter, the crime-tort exception does not apply here because the party exception is not the only basis for dismissal of Plaintiffs' ECPA claim. The crime-tort exception is only relevant when the party exception is the sole reason that a defendant avoids ECPA

liability. Where there is no "intercepted" communication, there is no liability under the ECPA. In that instance, the "party exception" is not invoked to avoid liability, and the crime-tort exception to the party exception does not apply. *See DIRECTV, Inc. v. Barnes*, 302 F. Supp. 2d 774, 779 n.4 (W.D. Mich. Feb. 2, 2004) (stating crime-tort exception only applies if there is an "interception"). Here, as previously discussed, InteliChart has not "intercepted" communications, so the crime-tort exception does not come into play.

Even if the party exception is invoked as a defense to liability, the "crime-tort exception" is not a basis to conclude that Plaintiffs have stated a claim in this case. Federal circuit courts that have examined the crime-tort exception have concluded that a plaintiff cannot invoke the exception simply by asserting that the act of "interception" itself gives rise to a tort claim or violates the law. *See, e.g.*, *Weston v. Lefiti*, No. 24-541, 2024 WL 4579237, at *2 (9th Cir. Oct. 25, 2024); *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022); *In re Google*, 806 F.3d at 145; *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010); *Clemons v. Waller*, 82 F. App'x 436, 440–41 (6th Cir. 2003); *Lucas v. Fox News Network, LLC*, 248 F.3d 1180 (11th Cir. 2001); *Sussman v. Am. Broad. Cos.*, 186 F.3d 1200, 1202–03 (9th Cir. 1999). As these decisions make clear, the plaintiff must allege a tortious or criminal intention *separate from* the interception. Those courts consider this in at least two ways.

First, federal appellate courts have required plaintiffs to allege a crime or tort *independent* of the "interception" that is the basis of their ECPA claim. *Caro*, 618 F.3d at 100; *Planned Parenthood*, 51 F.4th at 1136. When the only alleged tort or unlawful conduct is the act of recording itself, the plaintiff has not shown "a separate and independent tortious intent." *Caro*, 618 F.3d at 101. For instance, in *Caro*, even when the defendant recorded the plaintiff without permission, the crime-tort exception did not apply because the defendant had not "take[n] an

affirmative step or steps *beyond* the recording." *Id.* at 100–01 (emphasis added); *see also Planned Parenthood*, 51 F.4th at 1130, 1136 (rejecting ECPA claim because the defendants' alleged purpose in making the recordings was not "independent of and separate from the purpose of the recording").

These cases demonstrate that Plaintiffs have not alleged a tortious or criminal intention separate from InteliChart's use of Google Analytics that warrants application of the crime-tort exception; there is no "additional step" beyond InteliChart's use of this tool. Like the plaintiffs in *Caro* and *Planned Parenthood*, Plaintiffs contend that the "interception" forms the basis for their parallel tort claims and assertions that InteliChart violated HIPAA. Plaintiffs, in fact, describe the alleged disclosure as "simultaneous[]" and "contemporaneous." Compl. ¶¶ 37, 105. In other words, the action that forms the basis for their ECPA claim is one and the same as the action that forms the basis for their other claims, *id.* ¶¶ 37, 105, 206, 207, and the crime-tort exception does not apply.

Second, federal appellate courts have examined the purpose of a defendant's interception in determining whether the crime-tort exception applied. Where the complaint alleges a lawful purpose for the claimed "interception," these courts hold that the crime-tort exception does not apply. For example, in *Sussman v. American Broadcasting Companies*, the Ninth Circuit explained that the crime-tort exception did not apply because ABC News made the challenged recording to gather news—a lawful purpose. 186 F.3d at 1202–03. As the court recognized, "[w]here the purpose [of the recording] is not illegal or tortious, but the means are, the victims must seek redress elsewhere." *Id.*; *see also Lucas*, 248 F.3d 1180 (concluding that the crime-tort exception does not apply if there is a lawful purpose).

Federal courts in North Carolina have also rejected the theory that alleging a HIPAA violation allows a plaintiff to invoke the crime-tort exception. In *Rodriguez*, the Court declined to adopt the plaintiff's argument that the crime-tort exception applied because the defendant's purpose in using the tracking technology was to violate HIPAA. 741 F. Supp. 3d at 363–64. In dismissing the ECPA claim, the court cited assertions similar to those alleged here—that the defendant's use of tracking technology was for commercial use or financial gain. *Id.* at 363–64. Because those purposes were lawful, the crime-tort exception did not apply. *Id.* at 364.

This Court reached the same conclusion in *Roberts*. 2025 WL 880538, at *3. In that case, Judge Bell rejected the plaintiffs' allegations that the defendant "intercepted their data for the purpose of breaching HIPAA" as conclusory, in light of their separate allegations that the defendant used the data for "advertising purposes or commercial gain." *Id.* The Court held that the crime-tort exception did not apply and dismissed the plaintiffs' ECPA claim.

The Plaintiffs in this action expressly assert that InteliChart used tracking technologies "to optimize its marketing and product designs." Compl. ¶¶ 115, 137, 208. Such purposes are indisputably lawful, and Plaintiffs have not alleged a separate tortious or criminal purpose. The crime-tort exception does not apply here.

**B. The economic-loss rule bars recovery on Plaintiffs' tort claims.**

Plaintiffs allege that they entered into a contract with InteliChart, in the form of InteliChart's T&Cs. Compl. ¶¶ 258–60; *see also id.* ¶ 178. Plaintiffs' allegations not only confirm that they used the portal; they have alleged a meeting of the minds on the T&Cs. *See id.*

Because Plaintiffs alleged that they entered into a contract with InteliChart, the economic-loss rule bars Plaintiffs from recovering in tort. A plaintiff cannot assert a tort claim when the plaintiff claims an injury arising from an alleged breach of a bargained-for term in a contract. *E.g.*, *Perry v. Frigi-Temp Frigeration, Inc.*, No. 20 CVS 916, 2020 WL 5292044, at *7

(N.C. Super. Ct. Sept. 3, 2020); *Crescent Univ. City Venture, LLC v. Trussway Mfg., Inc.*, 376 N.C. 54, 62, 852 S.E.2d 98, 104 (2020). Moreover, Plaintiffs are barred from asserting a tort claim for conduct that is also alleged to be a breach of contract because they do not allege a separate and distinct duty enforceable in tort*.* *Edwards v. Vanguard Fiduciary Tr. Co.*, No. 18 CVS 2818, 2018 WL 6843415, at *9 (N.C. Super. Ct. Dec. 21, 2018). Accordingly, Plaintiffs must "look toward the breach of [the] contractual relationship . . . to recover these purely economic losses." *Crescent Univ. City Venture, LLC*, 376 N.C. at 62, 852 S.E.2d at 104.

Here, Plaintiffs allege the same conduct and possible damages for their tort and breach of contract claims—that InteliChart improperly disclosed their health information. Compl. ¶¶ 226, 229, 245, 253, 263, 267. The T&Cs address how InteliChart handles users' health information, including how that information is disclosed. *Id.* ¶¶ 258–59; Ex. A. Because Plaintiffs' alleged tort claims encompass the same subject matter as the T&Cs, the alleged contract, those tort claims should be dismissed.

Moreover, this is not a case where Plaintiffs' tort claims could be pleaded in the alternative. Under the language in the T&Cs, the only way in which Plaintiffs would *not* have agreed to the contract would be if they never used the portal. *See id.* ("By checking the 'I accept the Terms and Conditions of Use' box . . . or accessing or using any solution, you expressly agree and consent to be bound by the agreements."). If Plaintiffs never used the portal, they could not bring claims against InteliChart based on their use of the portal. Compl. ¶ 258.

Thus, Plaintiffs' tort-based claims should be dismissed under the economic-loss rule. *See Peter Marco, LLC v. Banc of Am. Merch. Servs., LLC*, 660 F. Supp. 3d 453, 469 (W.D.N.C. 2023) (dismissing negligence claim); *Perry*, 2020 WL 5292044, at *8 (dismissing breach of fiduciary duty claim).

### C. Plaintiffs allege no causation or damages for negligence, and they expressly allege intentional conduct.

Even if the Court declines to apply the economic-loss rule, Plaintiffs' negligence claim still fails. To state a claim for negligence, Plaintiffs' complaint must offer sufficient "notice of the nature and basis" of their damages. *Demarco v. Charlotte-Mecklenburg Hosp. Auth.*, 268 N.C. App. 334, 341, 836 S.E.2d 322, 328 (2019). Courts in the Fourth Circuit and North Carolina have also consistently required plaintiffs to sufficiently allege actual, tangible injuries to sustain negligence claims. For example, the North Carolina Supreme Court has observed that a court may dismiss a negligence claim on a Rule 12(b)(6) motion where a plaintiff does not allege actual injury, in the same way that a federal court can dismiss a complaint for lack of standing where no injury is alleged. *Comm. to Elect Dan Forest v. Emps. Pol. Action Comm.*, 376 N.C. 558, 596, 853 S.E.2d 698, 726 (2021) (citation omitted).

Plaintiffs broadly assert that they have suffered invasion of privacy, erosion of the "confidential nature of the doctor-patient and provider-patient relationship," loss of "something of value," loss of the value of their PHI, targeted advertisements, emotional distress, and increased risk of future harm. Compl. ¶¶ 151, 253. But they do not explain how they were damaged by an invasion of privacy, how their doctor-patient relationships were impacted, or how they valued the information allegedly disclosed. Such allegations cannot survive a Rule 12(b)(6) motion. *See Lamb v. Styles*, 263 N.C. App. 633, 644, 824 S.E.2d 170, 179 (2019) (dismissing claim where plaintiffs' only alleged injury was court costs); *Piedmont Inst. of Pain Mgmt. v. Staton Found.*, 157 N.C. App. 577, 596, 581 S.E.2d 68, 80 (2003) (dismissing claims where plaintiffs did not allege damages).

Courts presented with similar claims have rejected each of the damages theories that Plaintiffs have attempted to advance here:

**Increased risk of future harm.** Plaintiffs allege increased risk of future harm, but this does not establish damages for purposes of a negligence claim without showing an actual injury. *See Webb*, 72 F.4th at 372.

**Diminished value of PII.** North Carolina courts have not recognized "diminished value of PII" to be an actual injury, and other jurisdictions reject this theory for negligence claims. *See Bonewit v. New-Indy Containerboard LLC*, No. 24-CV-11338, 2024 WL 4932186, at *5 (D. Mass. Dec. 2, 2024) (collecting cases).

**Emotional distress.** Plaintiffs make only bare assertions of emotional distress, embarrassment, humiliation, and frustration. Compl. ¶ 151(k). North Carolina law requires more to allege an injury for negligent infliction of emotional distress. *See, e.g.*, *Horne v. Cumberland Cnty. Hosp. Sys., Inc.*, 228 N.C. App. 142, 149, 746 S.E.2d 13, 19–20 (2013) (dismissing NIED claim where plaintiff did not sufficiently allege characteristics of emotional distress).

**Targeted advertisements.** Plaintiffs do not plausibly allege that the "targeted advertisements" they say they received are the result of InteliChart's actions. They specifically allege that Google retained other information about Plaintiffs from their "prior searches," which shows that Google has information about Plaintiffs in its possession, regardless of any conduct by InteliChart. *See* Compl. ¶¶ 40, 104.

Finally, beyond Plaintiffs' failure to plead facts that would satisfy the damages and causation elements required to state a claim of negligence, they have not actually alleged negligent action by InteliChart. Although Plaintiffs describe InteliChart's conduct as "wanton and reckless" and "negligent," in the negligence cause of action, Compl. ¶¶ 240, 249, all their other factual allegations make clear that Plaintiffs are alleging that InteliChart acted intentionally, not negligently. *See, e.g.*, Compl. ¶¶ 103, 105, 106, 115, 116, 117, 222. Under

North Carolina law, "allegations of intentional conduct are incompatible with negligence," and Plaintiffs "cannot rest [their] negligence claim thereon." *Redman v. Am. Airlines, Inc.*, No. 322-CV-00515, 2023 WL 4768696, at *3 (W.D.N.C. July 26, 2023). Because Plaintiffs have "allege[d] only intentional conduct," they have not alleged a negligence claim. *Id.* at *3.

### D. Plaintiffs' breach of fiduciary duty claim fails.

Plaintiffs contend that InteliChart owes a fiduciary duty as a health care provider. Compl. ¶¶ 223, 228. This breach of fiduciary duty claim fails for three reasons: (1) InteliChart is not a health care provider, (2) the alleged contract does not give rise to a fiduciary duty, and (3) Plaintiffs have not sufficiently alleged causation.

#### 1. InteliChart is not a health care provider.

Courts have found a fiduciary relationship exists between patient and physician based on the medical care provided by the physician, the physician's specialized knowledge, and the trust and confidence that a patient places in a physician. *See McNew v. Fletcher Hosp., Inc.*, No. 22 CVS 19, 2022 WL 4359246, at *3 (N.C. Super. Ct. Sept. 20, 2022). The physician-patient relationship is known as a *de jure* fiduciary relationship because it is one recognized by law. *Id.* But the list of *de jure* fiduciary relationships is "limited," and the North Carolina Supreme Court will "not add to it lightly." *CommScope Credit Union v. Butler & Burke, LLP*, 369 N.C. 48, 52, 790 S.E.2d 657, 660 (2016); *Hager v. Smithfield E. Health Holdings, LLC,* 264 N.C. App. 350, 355, 826 S.E.2d 567, 571 (2019) (listing *de jure* fiduciary relationships).

*De facto* fiduciary relationships, by contrast, are those created by the facts at issue. *Lockerman v. S. River Elec. Membership Corp.*, 250 N.C. App. 631, 636–37, 794 S.E.2d 346, 352 (2016). Because a *de facto* fiduciary relationship does not arise from a defined legal relationship, the standard for finding a *de facto* fiduciary relationship is more demanding. *See id.*; *Hager*, 264 N.C. App. at 356, 826 S.E.2d at 572. This standard has been described as applying

"[o]nly when one party figuratively holds all the cards." *Hager*, 264 N.C. App. at 356, 826 S.E.2d at 572. Under these standards, Plaintiffs' allegations do not establish a fiduciary relationship based in law or in fact.

Plaintiffs fail to allege a *de jure* relationship because InteliChart is not a physician or health care provider—it is a portal provider. Plaintiffs seek to conflate a physician-patient relationship with the relationship between a portal provider and a portal accountholder, but this distinction matters. Plaintiffs do not allege that InteliChart has the same knowledge or confidences as a physician, and InteliChart does not provide medical care or specialized knowledge to portal users the way physicians do. Compl. ¶¶ 2, 14–16, 46. Indeed, Plaintiffs allege that physicians are users of the portal, not that InteliChart is serving as a health care provider by offering a portal that allows them to communicate with patients. *Id.* ¶ 37. Plaintiffs also expressly allege that they used the InteliChart portal "to seek and receive health care services," *id.* ¶ 27, and that they "shared communications within the InteliChart Patient Portal for the purpose of receiving medical care," *id.* ¶ 224. But they never allege that InteliChart—as opposed to Plaintiffs' doctors or health care system—provides medical services.

Nor have Plaintiffs alleged facts regarding their relationship with InteliChart necessary to meet the demanding standard required for a *de facto* fiduciary relationship. They attempt to rely on InteliChart's storage of confidential health information, *see id.* ¶ 223, but this does not create a fiduciary duty. *See Hager*, 264 N.C. App. at 359, 826 S.E.2d at 574 (holding that providing confidential information alone does not create a fiduciary duty under North Carolina law). Plaintiffs' allegations simply do not show that InteliChart "figuratively holds all the cards" in the relationship between portal provider and portal user, as needed to create a *de facto* fiduciary

relationship, especially when a plaintiff's provision of confidential information "alone does not create a fiduciary duty." *Id.*

### 2. InteliChart's T&Cs do not give rise to a fiduciary duty.

"Parties to a contract do not thereby become each other's fiduciaries." *Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 340, 828 S.E.2d 467, 476 (2019) (citation omitted). Plaintiffs allege that they entered into a contract with InteliChart in the form of the T&Cs, but they fail to offer allegations that would transform this alleged contractual relationship into a fiduciary one.

### 3. Plaintiffs cannot show that InteliChart was the proximate cause of the alleged injuries.

Breach of fiduciary duty is a tort that "require[s] as an essential element that a plaintiff incur actual damage." *Dove v. Harvey*, 168 N.C. App. 687, 691, 608 S.E.2d 798, 801 (2005). As discussed above, Plaintiffs have not alleged any actual damages. Accordingly, their breach of fiduciary duty claim also fails for this reason.

## E. Plaintiffs' breach of contract claim should be dismissed.

Plaintiffs allege that InteliChart breached its T&Cs by sharing personally identifiable information. Compl. ¶¶ 259–60. Plaintiffs allege six damages theories: (1) nominal damages; (2) "[g]eneral damages for invasion of . . . privacy rights"; (3) "[s]ensitive and confidential information including patient status and appointments that Plaintiffs . . . intended to remain private is no longer private"; (4) erosion of the "essential confidential nature of the doctor-patient and provider-patient relationship"; (5) "InteliChart took something of value from Plaintiffs … and derived benefit therefrom, without . . . knowledge, consent, or authorization and without sharing the benefit"; and (6) "[l]oss in the value of . . . Protected Health Information." Compl. ¶ 267. Even assuming those allegations are true, Plaintiffs still fail to allege cognizable contract damages.

Under North Carolina law, contract damages are designed to put the plaintiff in the same monetary position she would have occupied had the contract been performed. *Roberson v. Dale*, 464 F. Supp. 680, 683–84 (M.D.N.C. 1979). Plaintiffs did not pay to use the portal and do not allege any monetary loss from the alleged breach. *See* Compl. ¶¶ 2, 14–16, 151(f), 267. Their proposed damages—privacy injuries, relationship harms, restitution, and lost PHI value—are not cognizable contract damages.

Federal courts routinely reject these theories in data-privacy contract cases. In *In re JetBlue Airways Corp. Priv. Litig.*, the court dismissed a privacy-policy contract claim because loss of privacy is not a contract damage and there was "absolutely no support" for the theory that an individual passenger's personal information had compensable economic value. 379 F. Supp. 2d, 299, 326-27 (E.D.N.Y. 2005). Likewise, in *Low v. LinkedIn Corp.*, the court dismissed a breach of contract claim because embarrassment, humiliation, and alleged decrease in the value of personal information were not cognizable contract damages. 900 F. Supp. 2d 1010, 1028–29 (N.D. Cal. 2012).

At most, Plaintiffs may pursue nominal damages for breach of contract. *Marsico v. Adams*, 47 N.C. App. 196, 198, 266 S.E.2d 696, 698 (1980). But nominal damages, which North Carolina courts describe as "trivial" and "trifling," *id.*, cannot establish Article III standing, *see Amburgy v. Express Scripts, Inc.*, 671 F. Supp. 2d 1046, 1056 (E.D. Mo. 2009) (dismissing nominal-damages-only contract claim for lack of standing). Accordingly, the Court should dismiss Plaintiffs' breach of contract claim.

## **CONCLUSION**

For these reasons, the Court should dismiss Plaintiffs' claims with prejudice.

This the 18th day of August, 2026.

**ROBINSON, BRADSHAW & HINSON, P.A.**

/s/ Adam K. Doerr
Jonathan C. Krisko (N.C. Bar No. 28625)
Adam K. Doerr (N.C. Bar No. 37807)
Fitz E. Barringer (N.C. Bar No. 42679)
Jordan T. DeJaco (N.C. Bar No. 57866)
600 S. Tryon St., Suite 2300
Charlotte, North Carolina 28202
Telephone: (704) 377-2536
jkrisko@rbh.com
adoerr@rbh.com
fbarringer@rbh.com
jdejaco@rbh.com

Preetha L. Suresh (N.C. Bar No. 51022)
434 Fayetteville Street, Suite 1600
Raleigh, North Carolina 27601
Telephone: (919) 328-8820
psuresh@rbh.com

*Attorneys for Defendant InteliChart, LLC*